OPINION
{¶ 1} This is an appeal by plaintiff-appellant, Washington Mutual Bank, from a judgment of the Franklin County Court of Common Pleas, denying appellant's motion for summary judgment in a lien foreclosure action.
 {¶ 2} On November 27, 2001, appellant filed a complaint "for money foreclosure, and other equitable relief," naming as defendants Steven R. Loveland, Deborah V. Loveland, Fifth-Third Bank of Columbus, and Bank One Columbus. In the complaint, appellant alleged that it was the holder of a promissory note, dated August 28, 1998, and that, by reason of default by defendants Steven and Deborah Loveland (collectively, "the Lovelands"), appellant was owed the unpaid amount of $207,583.16, plus interest. The money from appellant was used to pay a prior first mortgage to Fifth Third in the amount of $73,785.35, which mortgage was recorded on August 20, 1992, and a second mortgage to Fifth Third in the amount of $35,814.85, which was recorded on June 3, 1993. The second mortgage was a revolving credit line, or equity line of credit, and, after it was paid by appellant, the Lovelands borrowed money again.
 {¶ 3} On September 13, 2002, defendant-appellee, Fifth Third Bank ("Fifth Third") filed an answer, cross-claim and counterclaim. In its cross-claim, Fifth Third alleged that, on April 26, 1993, the Lovelands executed and delivered to Fifth Third a note in the principal amount of $35,000, secured by a real estate mortgage which was recorded on June 3, 1993, and that the Lovelands had defaulted on the note. Fifth Third alleged that it was entitled to foreclosure of the Lovelands' equity of redemption on the real property. In its counterclaim, Fifth Third sought a determination as to the priority of liens on the real property, that the real property be sold and the proceeds be distributed.
 {¶ 4} On January 29, 2003, appellant filed a reply to Fifth Third's counterclaim. In its reply, appellant asserted that Fifth Third's counterclaim was barred because appellant was the holder of a valid first mortgage executed on August 28, 1998, and recorded on October 7, 1998. Appellant also raised affirmative defenses of equitable estoppel, equitable subrogation, unclean hands doctrine, and the doctrines of laches, waiver, estoppel and unjust enrichment, and Fifth Third's own negligence.
 {¶ 5} On June 16, 2003, appellant filed a motion for summary judgment against Fifth Third. In the memorandum in support, appellant asserted that it had a first and best mortgage by reason of equitable subrogation for the $109,581.59 advanced for the payoffs to Fifth Third. The trial court denied appellant's motion for summary judgment and appellant filed a notice of appeal, raising the following assignment of error:
The trial court committed reversible error when it denied plaintiff-appellant's June 16, 2003 motion for summary judgment as to lien priorities in its decision and entry of August 10, 2004 where appellant had shown that it in fact had lien priority over the lien of fifth third bank in accord with Ohio case law and in accord with the doctrine of equitable subrogation, and such decision was a final, appealable order.
 {¶ 6} Initially, we note that the denial of a motion for summary judgment is ordinarily not a final, appealable order. However, an action that declares one lien first in priority over all other liens is a final, appealable order. St. Clair Savings v. Janson (1974),40 Ohio App.2d 211. Thus, this is a final, appealable order.
 {¶ 7} By the assignment of error, appellant contends that the trial court erred in denying its motion for summary judgment as to the lien priorities. To prevail on a motion for summary judgment, the moving party must demonstrate that, when the evidence is construed most strongly in favor of the non-moving party, no genuine issue of material fact remains to be litigated and that it is entitled to judgment as a matter of law. Civ.R. 56(C); Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64. A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Williams v. First UnitedChurch of Christ (1974), 37 Ohio St.2d 150, 151. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the non-moving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 8} When an appellate court reviews a trial court's disposition of a summary judgment motion, the appellate court applies the same standard as applied by the trial court. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107. An appellate court's review of a summary judgment disposition is independent and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Thus, in determining whether a trial court properly granted a summary judgment motion, an appellate court must review the evidence in accordance with the standard set forth in Civ.R. 56, as well as the applicable law. Murphy.
 {¶ 9} Appellant argues that the trial court erred in denying its motion for summary judgment because the court failed to apply the doctrine of equitable subrogation and find that appellant has a first and best lien on the premises to the extent of the first $109,581.59, plus interest, costs and expenses.
 {¶ 10} Pursuant to R.C. 5301.23(A), the general rule is that "the first mortgage recorded shall have preference" over subsequently recorded mortgages. Thus, according to this rule, Fifth Third would have priority over appellant since its mortgage was filed June 3, 1993, and appellant recorded its mortgage on October 7, 1998.
 {¶ 11} However, the doctrine of equitable subrogation can defeat this statutory rule of first in time, first in right. First Union Natl. Bankv. Harmon, Franklin App. No. 02AP-77, 2002-Ohio-4446. The doctrine of equitable subrogation:
"* * * [A]rises by operation of law when one having a liability or right * * * in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid."
State v. Jones (1980), 61 Ohio St.2d 99, 102, quoting Federal UnionLife Ins. Co. v. Deitsch (1934), 127 Ohio St. 505, 510. "Equitable subrogation is essentially a theory of unjust enrichment." Ridge ToolCo. v. Silva (1986), 33 Ohio App.3d 260, 261. Equitable subrogation is largely concerned with the prevention of fraud and relief against mistakes and depends upon the facts and circumstances of each particular case. Jones, supra, at 102. "In order to entitle one to subrogation, his equity must be strong and his case clear." Id.
 {¶ 12} Appellant argues that it is entitled to equitable subrogation and it had a first and best mortgage lien for $109,581.59, the amount which was advanced for the two payoffs to Fifth Third. Appellant alleges that Fifth Third was negligent in failing to close the home equity line in direct conflict with written instructions from the borrower to do so. However, the trial court found that appellant had failed to demonstrate that the borrower had given Fifth Third written instructions to close the home equity line. Appellant contends that it sent a letter to Fifth Third directing Fifth Third to close the Lovelands' account, but the letter was not provided to the court, nor did it provide an affidavit indicating that such a letter was sent. Appellant did provide an affidavit attached to its summary judgment motion, in which Brian Biglin, an attorney with Title First Agency, Inc. ("Title First"), averred in part:
4. That Title First was/is the majority owner of Market Street Title Agency, Inc. ("Market Street Title") but that Market Street Title is no longer actively in business.
* * *
6. That the Washington Mutual Mortgage closing took place at Market Street Title on or about August 28, 1998, and the disbursement took place on or about September 2, 1998.
* * *
10. That Market Street Title tendered * * * checks in the amounts set forth in Paragraphs 8 and 9 above to Fifth Third Bank, along with a copy of its own first mortgage payoff statement and written, signed specific instructions from its borrower to close the home equity line account and to issue a mortgage satisfaction. Obtaining and mailing signed instructions to close the account and to issue a mortgage satisfaction were standard practices of Market Street Title, although the specific copy of that letter to Fifth Third Bank has not yet been located.
11. That Market Street Title's standard procedure was to produce a payoff letter on every closing where a second mortgage or a home equity loan existed, instructing that mortgagee to close the account, and that Market Street Title would have mailed such a letter, signed by Fifth Third Bank's borrower, to Fifth Third Bank, along with the payoff check, which Fifth Third Bank endorsed, relative to the payoff of its home equity line second mortgage.
 {¶ 13} However, this affidavit provides that sending a letter with instructions to close the account was the standard practice of Title First. A copy of the letter was never produced. The trial court also found that appellant was in the best position to secure its interests and assure that Fifth Third actually closed the home equity line. However, appellant failed to follow the proper procedures to have the account closed and also failed to confirm that the equity line had been closed and properly released to ensure that it had first priority in the public records. "Equitable subrogation will not be used to benefit parties who were negligent in their business transactions, and who were obviously in the best position to protect their own interests." KeyBank Natl. Assn.v. GMAC Mtge. Corp., Franklin App. No. 02AP-1293, 2003-Ohio-6651, at ¶ 20.
 {¶ 14} Moreover, appellant has not demonstrated that it complied with R.C. 5301.232, which governs the priority of open-end mortgages. Pursuant to R.C. 5301.232(D), in order for a new mortgage to gain priority over a subsequent open-end mortgage, the mortgager is required to submit a written notice to release the mortgage. This written notice must include:
* * * [A] description of the real property to which the notice relates, the date, parties to, the volume and initial page of the record or the recorder's file number of the mortgage over which priority is claimed for the lien or encumbrance, and the amount and nature of the claim to which the lien or encumbrance relates. * * *
There is no evidence that appellant complied with the statute.
 {¶ 15} This case is similar to Huntington Natl. Bank v. McCallister
(Feb. 18, 1997), Butler App. No. CA96-07-144. In McCallister, the court did not apply equitable subrogation because Dollar Federal Savings Bank, nka Great Lakes Bancorp, failed to protect its interest in first priority by not confirming that Huntington had closed the equity credit line when it loaned the borrowers money to pay off the Huntington credit line.
 {¶ 16} In another similar case, KeyBank, supra, GMAC Mortgage Corporation argued that the court should apply equitable subrogation to give its lien priority because KeyBank had not bargained for or given any consideration for first priority. This court refused to apply equitable subrogation because the lender failed to ensure that a subrogation agreement was executed prior to closing.
 {¶ 17} In this case, appellant has not demonstrated that its equity is strong and its case clear. Appellant was in the best position to secure its interests and assure that Fifth Third actually closed the home equity line, however, it failed to follow the proper procedures to have the account closed or to confirm that the equity line had been closed and properly released to ensure that it had first priority in the public records. As such, the trial court did not err in failing to grant appellant's summary judgment motion. Appellant's assignment of error is not well-taken.
 {¶ 18} For the foregoing reasons, appellant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Lazarus and French, JJ., concur.